IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

vs.	NO. CR-03-1143 MCA

**FRANCISCA RIVAS-DE BARRAZA and
ROCIO BARRAZA,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

On January 21, 2004, this Court issued an Order (Doc. No. 65) permitting the parties simultaneously to file memoranda of law in support of their respective positions on Defendants' Motions for Judgment of Acquittal. Having fully reviewed the briefs, the trial transcript, and the relevant case law, the Court finds that the motions should be denied.

**I.	STANDARD OF REVIEW**

In considering a motion for judgment of acquittal, a court will review all the evidence in the light most favorable to the Government to determine whether a rational trier of fact could have found the defendants guilty beyond a reasonable doubt. See United States v. Monts, 311 F.3d 993, 1000 (10th Cir. 2002) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)). A court will not overturn a jury's finding unless no reasonable juror could have reached the disputed verdict. United States v. Carter, 130 F.3d 1432, 1439 (10th Cir. 1997). The jury, as fact finder,

has discretion to resolve all conflicting testimony, weigh the evidence, and draw reasonable inferences from the basic facts to the ultimate facts. See United States v. Valadez-Gallegos, 162 F.3d 1256, 1262 (10th Cir. 1998). The Tenth Circuit has stated that an inference is reasonable "only if the conclusion flows from logical and probabilistic reasoning." Id. Furthermore, "the evidence supporting the conviction must be substantial," and do more than raise a mere suspicion of guilt. See United States v. Taylor, 113 F.3d 1136, 1144 (10th Cir. 1997). A court may not uphold a conviction obtained by piling inference upon inference. See United States v. Anderson, 189 F.3d 1201, 1205 (10th Cir. 1999).

**II. BACKGROUND**

On January 6 and 7, 2004, Defendants were tried before a jury on the following charges: conspiracy to commit transporting illegal aliens (Count I); transporting an illegal alien, Francisco Garcia-Padilla (Count II); harboring an illegal alien, Francisco Garcia-Padilla (Count III); transporting an illegal alien, Rafael Delgado-Cedillo (Count IV); and harboring an illegal alien, Rafael Delgado-Cedillo (Count V). At the close of the Government's case, and again at the close of all the evidence, both Defendants moved for judgment of acquittal under FED. R. CRIM. P. 29(a). Tr. at 141-43, 199. The Court reserved decision on Defendants' motions under FED. R. CRIM. P. 29(b) and submitted the case to the jury. Tr. at 145. The jury found Defendant Francisca Rivas-De Barraza guilty on Counts I through V, and found Defendant Rocio Barraza guilty on Counts II through V.[1]

This case arises from events that occurred on April 25, 2003. At around dusk on that day,

---

[1] Defendant Rocio Barraza has not argued that the jury's inability to reach a unanimous verdict as to her guilt for Count I is inconsistent with the jury's finding her guilty on Counts II through V.

2

a Chevrolet van driven by Ms. Rivas-De Barraza approached the Border Patrol checkpoint on Interstate 25, located near the town of Radium Springs, New Mexico. As the van approached the checkpoint, Border Patrol Agent Manuel Martinez noticed that the rear of the van appeared to be "riding a little high." Id. at 88. In Agent Martinez's experience, it is common practice for smugglers to adjust the rear suspension of vehicles used in smuggling operations in order to accommodate heavy cargo. Id. Agent Martinez also noticed that the van's rear compartment was cluttered with numerous objects that obstructed the view of the van's back seat. Id. According to Border Patrol Agent Chris Dooley, who also observed the van at the checkpoint that evening, it is common practice for smugglers to load a vehicle with large quantities of items in order to conceal something inside the vehicle. Id. at 63.

According to Agent Martinez, Ms. Rivas-De Barraza was driving the van, and her daughter, Ms. Barraza, was seated in the front passenger seat. Id. at 85-86. Agent Martinez stated that two other adult females and three children were also inside the vehicle. Id. at 85. When the van pulled up to the checkpoint, Agent Martinez asked Ms. Rivas-De Barraza about the citizenship status of the van's occupants. Id. at 86. Ms. Rivas-De Barraza handed Agent Martinez her resident alien card, as well as the resident alien cards of the visible passengers in the vehicle. Id. As Ms. Rivas-De Barraza handed the cards to Agent Martinez, he noticed that her hands were shaking, and that she looked as if "she wanted to just take off." Id. at 86-87. Agent Martinez observed that the visible adult passengers in the van also appeared nervous, and that they avoided making eye contact with him. Id. Agent Martinez then asked Ms. Rivas-De Barraza for permission to conduct a search of the vehicle. Id. at 88-89. Ms. Rivas-De Barraza consented, and pulled the van into the secondary inspection area of the checkpoint. Id. at 89.

Once the van had entered the checkpoint's secondary inspection area and Ms. Rivas-De Barraza and the visible passengers had exited the vehicle, Agent Martinez asked for and received consent from Ms. Rivas-De Barraza to search the van with a K-9 unit. Id. When Agent Dooley performed a K-9 inspection of the van, the dog "alerted" to the vehicle, indicating the possible presence of illegal contraband or persons. Id. Agent Martinez then asked Ms. Rivas-De Barraza if anyone else was inside the vehicle, and she answered that there was not. Id. When the agents proceeded to inspect the interior of the vehicle, they discovered what appeared to be an after-market wooden compartment on the floor beneath the van's rear seat. Id. The compartment, which was partially concealed by a blanket draped over the rear seat, measured approximately five feet wide, four feet long, and two feet tall, and contained a hinged door that enabled the compartment to be closed shut. Id. at 66. Within the close confines of this hidden compartment, the agents discovered five adults squeezed tightly together. Id. at 90.

After Border Patrol agents removed the five individuals from the vehicle, the agents began processing them in order to ascertain their identities and citizenship status. Id. at 67, 92. Agent Martinez testified that none of the individuals possessed documentation allowing them to be in the United States. Id. at 92. The agents entered the names of all five individuals into the Immigration and Naturalization Service Ident Database, and found no indication that any of them was either a naturalized or natural born citizen of the United States. Id. at 96-97. Agent Martinez also testified that during the processing of the five individuals, he asked if they would be willing to provide information regarding the arrangements they had made with Defendants for transporting them through the Border Patrol checkpoint. Id. at 101. Agent Martinez explained to the five individuals that if they agreed to provide such information, they could receive work permits and

4

legally remain in the United States as material witnesses until the time of Defendants' trial. Id.

One of the persons who had been inside the van's hidden compartment was Rafael Delgado-Cedillo. Id. at 96. Mr. Delgado-Cedillo agreed to become a material witness for the Government and to testify about the transportation arrangements he had made with Defendants. Plf. Mot. in Limine (Doc. No. 52) at 1. Mr. Delgado-Cedillo then made a sworn statement to Border Patrol agents that he was born in Jalisco, Mexico and that he was a Mexican citizen.[2] Tr. at 95-96. However, prior to Defendants' trial, Mr. Delgado-Cedillo absconded, and his whereabouts at the time of trial were unknown. Plf. Mot. in Limine (Doc. No. 52) at 1.

Another person who had been inside the van's hidden compartment was Francisco Garcia-Padilla. Mr. Garcia-Padilla also agreed to serve as a material witness, and testified at trial about the transportation arrangements that he had made with Defendants. Mr. Garcia-Padilla testified that he was born in Zacatecas, Mexico and that he had first entered the United States illegally in 1998. Tr. at 113-14. In April of 2003, Mr. Garcia-Padilla was staying with an aunt in El Paso, Texas, and sought to arrange transportation to Albuquerque, New Mexico. Id. at 116-17. A cousin of Mr. Garcia-Padilla lived in Albuquerque and was a neighbor of Ms. Rivas-De Barraza. Id. at 118. Mr. Garcia-Padilla testified that his cousin arranged for Ms. Rivas-De Barraza to transport Mr. Garcia-Padilla from El Paso to Albuquerque. Id. at 118-19; 125-26; 129-30.

According to Mr. Garcia-Padilla, Defendants picked him up at the house where he had been staying near downtown El Paso. Id. at 119. Mr. Garcia-Padilla stated that approximately

---

[2] The Government filed a motion in limine to admit hearsay evidence of Mr. Delgado-Cedillo's status as an illegal alien, arguing that such evidence was admissible under FED. R. EVID. 804(b)(3) as a statement against interest (Doc. No. 52). At trial, the Court granted the Government's motion, finding that the Government had made an adequate showing that Mr. Delgado-Cedillo was unavailable and that his statements regarding his alien status were inculpatory and would not have been made unless they were believed to be true. Tr. at 73-74.

5

seven other individuals were in the van at the time Defendants picked him up. Id. at 121. Mr. Garcia-Padilla paid Ms. Rivas De-Barraza $100 for gasoline, but did not pay anything to Ms. Barraza. Id. at 119, 125-26. Mr. Garcia-Padilla informed Ms. Rivas De-Barraza that he was in possession of immigration documents that permitted him to be in the country. Id. at 119. However, according to Mr. Garcia-Padilla, Ms. Rivas De-Barraza told him "Don't take them with you, pretend you don't have them. Pretend you don't have them with you." Id.

Mr. Garcia-Padilla stated that, after he was picked up, the van stopped briefly at a gas station, and then continued on for about forty minutes until it neared the Border Patrol checkpoint. Id. at 120-21. Mr. Garcia-Padilla testified that, as the van approached the checkpoint, the front-seat passenger, Ms. Barraza, instructed him and the other aliens to "get underneath," and "quick." Id. at 122-23. Mr. Garcia-Padilla stated that he and the other aliens then crawled into the hidden compartment under the rear seat of the van in response to Ms. Barraza's command. Id. While he and the other aliens were in the hidden compartment, Mr. Garcia-Padilla heard someone tell them to be quiet, but he did not know who gave that instruction. Id. at 123.

## III. DISCUSSION

Defendants argue in their motions for judgment of acquittal that the Government presented insufficient evidence for a jury to find beyond a reasonable doubt that Defendants were guilty of the crimes for which they were charged and ultimately convicted. In considering Defendants' motions under FED. R. CRIM. P. 29(b), the Court will examine only the evidence that had been presented at the time that Defendants first made their motions at the close of the Government's case. See FED. R. CRIM. P. 29(b); 26 MOORE'S FEDERAL PRACTICE § 629.03[4]

(3d ed. 1999) (when court reserves ruling under Rule 29(b), it must consider only the evidence submitted at time the motion was made).

    **A.**    **Sufficiency of Evidence for Count I, Conspiracy to Transport Illegal Aliens**

As the Court instructed the jury, in order to convict Defendants on Count I for conspiracy to transport illegal aliens, the Government had to prove the following elements beyond a reasonable doubt: 1) that Defendants made an agreement to commit the crime of transporting illegal aliens as charged in the indictment; 2) that Defendants knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; 3) that one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the indictment, in order to accomplish some object or purpose of the conspiracy; and 4) that there was interdependence among the defendants, meaning that they intended to act together for their mutual benefit to accomplish a shared, unlawful purpose. Jury Instr. (Doc. No. 61) at 6. The Tenth Circuit has stated that, in determining a defendant's guilt for a charge of conspiracy, a jury may "infer an agreement constituting a conspiracy from the acts of the parties and other circumstantial evidence indicating concert of action for the accomplishment of a common purpose." United States v. Scull, 321 F.3d 1270, 1282 (10th Cir. 2003).

In this case, the material witness, Mr. Garcia-Padilla, testified that his cousin and Ms. Rivas-De Barraza made an agreement that Ms. Rivas-De Barraza would transport Mr. Garcia-Padilla to Albuquerque for $100. According to Mr. Garcia-Padilla, Ms. Rivas-De Barraza told him to pretend that he did not have immigration documents, while Ms. Barraza instructed him to hide in the van's secret compartment as they approached the Border Patrol checkpoint. Agent

7

Martinez testified that Ms. Rivas-De Barraza was driving the van, that she acted nervously at the checkpoint, and that she lied to the Border Patrol agents by telling them that there were no other people in the van during the secondary inspection of the vehicle.

Viewed in the light most favorable to the Government, the evidence and the reasonable inferences drawn therefrom support the jury's finding that Ms. Rivas-De Barraza conspired to transport illegal aliens. A reasonable jury could conclude from the evidence that Ms. Rivas-De Barraza, by making arrangements with Mr. Garcia-Padilla's cousin, knew of and agreed to the plan to transport Mr. Garcia-Padilla, an illegal alien, from El Paso to Albuquerque. See Scull, 321 F.3d at 1282. In light of Ms. Rivas-De Barraza's nervous behavior and her statement to Border Patrol agents that nobody else was in the vehicle, a reasonable jury could infer that she knew it was illegal to transport illegal aliens. In addition, the evidence that Ms. Rivas-De Barraza drove the van and attempted to conceal Mr. Garcia-Padilla from Border Patrol Agents supports a determination that she committed the overt act of transporting illegal aliens, and acted with interdependence in order to accomplish the conspiracy's unlawful purpose.

### B. Sufficiency of Evidence for Counts II and IV, Transporting an Illegal Alien

The Court instructed the jury that in order to find Defendants guilty of transporting an illegal alien, the Government must prove beyond a reasonable doubt that: 1) an alien had entered or remained in the United States in violation of the law; 2) Defendants knew or recklessly disregarded the fact that the alien was in the United States in violation of the law; and 3) the Defendants transported the alien within the United States with intent to further the alien's unlawful presence. Jury Instr. (Doc. No. 61) at 8. The jury found both Defendants guilty of transporting illegal aliens as charged in Counts II and IV.

8

Defendants do not dispute that the Government presented sufficient evidence to prove that Rafael Delgado-Cedillo and Francisco Garcia-Padilla had entered the United States in violation of the law. Rather, Defendants argue that the Government presented insufficient evidence to prove beyond a reasonable doubt that Defendants knew or recklessly disregarded the fact that Mr. Garcia-Padilla and Mr. Delgado-Cedillo were illegal aliens. Defendants also claim that the Government presented insufficient evidence to satisfy the "in furtherance of" element. Furthermore, Ms. Barraza argues more generally that the Government failed to prove beyond a reasonable doubt that she was at all involved in the transporting of illegal aliens.

  i. <u>Defendants Knew or Recklessly Disregarded the Illegal Status of the Aliens</u>

As support for their arguments that Defendants did not know or recklessly disregard the illegal status of the aliens, Defendants point out that Mr. Garcia-Padilla told Ms. Rivas-De Barraza that he possessed immigration papers that allowed him to be in the United States. In addition, Defendants note that Mr. Garcia-Padilla testified that he had been working in Indianapolis since 1998 using a false social security number, and that he had only arranged for transportation between El Paso and Albuquerque, meaning that he had not arranged for transportation across the U.S.-Mexican border. Tr. at 118, 125. Defendants argue that they did not know or recklessly disregard the fact that Mr. Garcia-Padilla was an illegal alien, because Mr. Garcia-Padilla had lived and worked in the United States for approximately five years prior to the incident in question, and claimed to have documentation allowing him to be in the country legally. With respect to Mr. Delgado-Cedillo, Defendants assert that the Government presented no direct evidence that Defendants were aware of how Mr. Delgado-Cedillo had entered the country, or about any conversation or interaction between Defendants and Mr. Delgado-Cedillo that would

9

prove beyond a reasonable doubt that they knew or recklessly disregarded the fact that he was illegally present in the United States.

The Court finds that the direct and circumstantial evidence presented in the Government's case in chief was sufficient to prove that both Defendants knew or recklessly disregarded the fact that Rafael Delgado-Cedillo and Francisco Garcia-Padilla were in the United States in violation of the law. With respect to Ms. Rivas-De Barraza, it is notable that although Mr. Garcia-Padilla told her that he possessed immigration documents, she responded by telling him to "pretend you don't have them with you." A jury could infer from her statements that Ms. Rivas-De Barraza either did not believe that Mr. Garcia-Padilla actually possessed immigration documents, or did not believe such documents were genuine. In addition, Ms. Rivas-De Barraza lied to the Border Patrol agents, telling them that nobody else was in the vehicle in an attempt to prevent the agents from discovering Mr. Garcia-Padilla and Mr. Delgado-Cedillo in the hidden compartment. Again, this evidence supports a reasonable inference that Ms. Rivas-De Barraza was aware of the illegal status of Mr. Garcia-Padilla and Mr. Delgado-Cedillo. See United States v. Perez-Gomez, 638 F.2d 215, 218-19 (10th Cir. 1981) (evidence of defendant's concern that aliens be kept secreted to avoid suspicion was sufficient to prove that defendant knew aliens were in United States in violation of law).

Turning to the evidence against Ms. Barraza, the Court notes that Mr. Garcia-Padilla testified that Ms. Barraza instructed him and Mr. Delgado-Cedillo to hide in the van's secret compartment as the vehicle approached the Border Patrol checkpoint. It was reasonable for the jury to infer that Ms. Barraza gave this instruction because she knew Mr. Garcia-Padilla and Mr. Delgado-Cedillo were illegal aliens, and wanted to conceal them from the Border Patrol agents.

The Court finds that this was sufficient evidence to prove that Ms. Barraza knew or recklessly disregarded the fact that Mr. Garcia-Padilla and Mr. Delgado-Cedillo were illegal aliens. See Guerra-Garcia, 336 F.3d at 24 (evidence that defendants knew or recklessly disregarded illegal alien status of passenger may be based entirely on circumstantial evidence, including inferences from surrounding circumstances).

    ii.  <u>Defendants Transported Aliens in Furtherance of Their Unlawful Presence</u>

  Defendants also contend that the evidence was insufficient for the jury to find that Defendants transported Mr. Delgado-Cedillo and Mr. Garcia-Padilla with intent to further their unlawful presence in the United States. According to Defendants, the central object of inquiry for determining whether the "in furtherance of" element has been satisfied is "the defendant's purpose in conducting the transportation." Defendants assert that the only evidence concerning the purpose of their act of transportation was the testimony of Mr. Garcia-Padilla, who stated that he was being given a ride from El Paso to Albuquerque. Defendants argue that this testimony was insufficient to prove beyond a reasonable doubt that Defendants were transporting Mr. Garcia-Padilla with intent to further his illegal presence in the United States.

  However, a reasonable jury could find that both Defendants did transport Mr. Garcia-Padilla and Mr. Delgado-Cedillo with intent to further their illegal presence in the United States. The Tenth Circuit has held that the element of transporting an alien "in furtherance of the alien's violation of the law" is satisfied if the defendant's transportation of the alien will "help, advance, or promote the alien's . . . continued illegal presence in the United States." United States v. Barajas-Chavez, 162 F.3d 1285, 1288 (10th Cir. 1999). In this case, Agent Carroll testified that once the van driven by Ms. Rivas-De Barraza had passed through the Border Patrol checkpoint in

Radium Springs, it was highly unlikely that the vehicle would have encountered additional Border Patrol investigations. Tr. at 52. Thus, once the aliens cleared the checkpoint at Radium Springs, they would have been "home free," in the words of Agent Carroll. Id. Accordingly, Defendants' acts of transporting Mr. Garcia-Padilla and Mr. Delgado-Cedillo through the Border Patrol checkpoint would have helped, advanced, or promoted their illegal presence in the United States because it would have allowed the aliens to evade Border Patrol authorities. See Barajas-Chavez, 162 F.3d at 1289-90 (evidence sufficient to satisfy "in furtherance of" element because transportation would have assisted aliens in evading immigration authorities by relocating them to city farther away from border with Mexico).

      iii.     Sufficiency of Evidence to Find Ms. Barraza Guilty of Aiding and Abetting

Ms. Barraza argues that the Government presented "absolutely no evidence" regarding her involvement in transporting the illegal aliens in question. According to Ms. Barraza, the evidence presented at trial reveals that: she did not drive the vehicle; she did not own the vehicle; she did not make transportation arrangements with Mr. Garcia-Padilla's cousin; she did not receive money from Mr. Garcia-Padilla for the trip; and she did not speak to Border Patrol agents at the checkpoint. Ms. Barraza contends that the only evidence of her involvement in the transportation of illegal aliens was the testimony of Mr. Garcia-Padilla, who stated that Ms. Barraza instructed him and the other aliens to quickly hide in the van's hidden compartment as the vehicle approached the checkpoint. Furthermore, Ms. Barraza asserts that Mr. Garcia-Padilla's testimony contradicted statements he had made in an interview with defense counsel on December 9, 2003 regarding whether it was Ms. Barraza, rather than some other person in the van, who instructed the aliens to hide in the secret compartment.

The Court rejects Ms. Barraza's argument that there was insufficient evidence to support the jury's finding that she was guilty of transporting illegal aliens. The Court instructed the jury on the Government's theory of aiding and abetting in the transportation of illegal aliens, stating that Defendants may be held criminally responsible without proof that they personally did every act constituting the alleged offense, if the Government proves beyond a reasonable doubt that: 1) the offense of transporting illegal aliens was committed by some person; 2) Defendants associated with the criminal venture; 3) Defendants purposefully participated in the criminal venture; and 4) Defendants sought by action to make the venture successful. Jury Instr. (Doc. No. 61) at 10-11.

The Government presented ample evidence to support a finding that Ms. Barraza aided and abetted in the transportation of illegal aliens. From the direct and circumstantial evidence, a reasonable jury could find that the offense of transporting illegal aliens was committed by the driver of the vehicle, Ms. Rivas-De Barraza, who is Ms. Barraza's mother. Given the mother-daughter relationship between Ms. Rivas-de Barraza and Ms. Barraza, it was reasonable for the jury to infer that Ms. Barraza had knowledge of the arrangements Ms. Rivas-De Barraza had made to transport Mr. Garcia-Padilla and Mr. Delgado-Sedillo. The evidence that Ms. Barraza was present in the front passenger seat of the vehicle, and that shortly before the van arrived at the checkpoint she instructed Mr. Garcia-Padilla and Mr. Delgado-Cedillo to hide in the secret compartment, supports the jury's finding that Ms. Barraza associated with and purposefully participated in the criminal venture of transporting illegal aliens. Moreover, the jury could reasonably infer that Ms. Barraza instructed the aliens to hide in order to conceal the aliens from the Border Patrol agents, and that she therefore sought to make the criminal venture successful. Although Ms. Barraza contends that Mr. Garcia-Padilla's testimony is inconsistent with

13

statements he made to defense counsel prior to trial, Mr. Garcia-Padilla stated that he had trouble understanding the telephone interpreter in the December 9, 2003 interview, which may have accounted for any inconsistencies between his prior statements and his testimony at trial. Tr. at 139-40. Moreover, the Court notes that it is the sole province of the jury to assess a witness's credibility, and a court will not second-guess the jury's credibility determinations. United States v. Guidry, 199 F.3d 1150, 1156 (10th Cir. 1999). The jury may have determined that Mr. Garcia-Padilla's testimony was the truth, and that any inconsistency between his testimony and his prior statements to defense counsel were the result of mis-communication. Accordingly, the Court finds that there was sufficient evidence for the jury to find Ms. Barraza guilty of transporting illegal aliens as stated in Counts II and IV.

### C.     Sufficiency of Evidence for Counts III and V, Harboring an Illegal Alien

The Court instructed the jury that in order to find Defendants guilty of the crime of harboring an illegal alien, the Government must prove beyond a reasonable doubt that: 1) an alien entered or remained in the United States in violation of the law; 2) Defendants concealed the alien within the United States; 3) Defendants knew or acted in reckless disregard of the fact that the alien entered or remained in the United States in violation of the law; and 4) Defendants' conduct tended to substantially facilitate the alien remaining in the United States illegally.

Defendants do not dispute that the Government presented sufficient evidence to prove the first two elements, that an alien had entered the United States and that Defendants concealed the alien within the United States. Rather, Defendants argue that there was insufficient evidence to support the jury's finding that Defendants knew or acted in reckless disregard of the aliens' illegal status, or that Defendants' conduct tended to substantially facilitate the alien remaining in the

United States. However, the Court finds Defendants' arguments unpersuasive, for substantially the same reasons discussed above regarding the charges of transporting illegal aliens. First, the evidence of both Defendants' efforts to conceal Mr. Garcia-Padilla and Mr. Delgado-Cedillo from Border Patrol agents supports the jury's finding that Ms. Rivas-De Barraza and Ms. Barraza were aware or acted in reckless disregard of the illegal status of the aliens. Moreover, the evidence of Defendants' efforts to transport Mr. Garcia-Padilla and Mr. Delgado-Cedillo through the Border Patrol checkpoint, which would have allowed the aliens to evade authorities, supports the jury's finding that Defendants' conduct tended to substantially facilitate the aliens' remaining in the United States. Accordingly, the Court determines that there was sufficient evidence to support Defendants' convictions of the charges of harboring illegal aliens as stated in Counts III and V.

THEREFORE, it is ORDERED that Defendants' Motions for Judgment of Acquittal are DENIED.

_____
SENIOR UNITED STATES DISTRICT JUDGE